**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**ROBERT CURTIS VANNESS,**

                                         Petitioner,

                v.                                          9:08-CV-0361
                                                                                  **(GLS)**

**DAVID ROCK,**

                                         Respondent.
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**APPEARANCES:**                              **OF COUNSEL:**

**ROBERT CURTIS VANNESS**
Petitioner, *pro se*

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**             **THOMAS B. LITSKY, ESQ.**
Attorney General for the                   Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271

**GARY L. SHARPE**
**UNITED STATES DISTRICT JUDGE**

## MEMORANDUM-DECISION AND ORDER

**I.**    **Background**

According to the testimony adduced at trial, S.C. was born on August 22, 1991 and was 14 years old at the time of the trial. *See* Transcript of Trial of Robert Curtis VanNess (1/17/06) ("Trial Tr.") at pp. 299-300.[1]  On November 30, 2004, she was living in Ballston Spa, New York,

---

[1] Under New York law:

> [t]he identity of any victim of a sex offense ... shall be confidential. No ... court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection.

with her younger brother and sister, her mother Melissa T., and her mother's boyfriend, petitioner, *pro se* Robert Curtis VanNess. Trial Tr. at pp. 300-01. On that day, S.C. missed the bus she was to take to school so she returned home. *Id.* at p. 301.[2] After S.C. brought her younger siblings to their school bus, she returned home and started making breakfast and watching television. *Id.* at p. 302. Around that time, VanNess directed S.C. to bring him a glass. *Id.* at p. 303. He then poured beer in the glass and told S.C. to drink the beverage. *Id.* at pp. 303-04. S.C. complied because VanNess was yelling at her. *Id.* at p. 304. She then went into her room and refused to allow VanNess access to her bedroom. *Id.* The beer made S.C. feel sick, however, and, as a result, she vomited. *Id.* She then decided to take a bath, and, while she was in the tub, VanNess pulled her out of the bathtub and removed his pants. *Id.* at p. 305. He then threw her on her mother's bed and raped her. *Id.* at pp. 305-06. During that assault, S.C. kicked, screamed, tried to hit VanNess and bit him on his arm. *Id.* at p. 306. VanNess then informed S.C. that if she performed oral sex on him he would stop his sexual assault. *Id.* at p. 307. Although S.C. complied with his demand, VanNess thereafter raped S.C. a second time. *Id.* Around that time, VanNess threatened to tie S.C. up if she did not stop screaming, and advised her that he might make use of knives that were located in the kitchen. *Id.* He also threatened to kill S.C. if she did not do as she was told. *Id.* at pp. 307-08. When VanNess tried to kiss S.C., she bit him, causing him to strike her on her face, which in turn caused her to fall off the bed. *Id.* at p. 308. He then picked S.C. up, threw her back on the bed and "continued to

---

*See* New York's Civil Rights Law § 50-b. In light of this provision, the Court will refer to the victim by her initials so as to ensure her privacy. *See Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 109 n.4 (2d Cir. 2000) (substantial compliance with this statute is obtained where the court refers to the victim by use of initials).

[2] At the time, S.C.'s mother was at work. Trial Tr. at p. 301.

rape" S.C. and orally sodomize her. *Id.*

After the attack, S.C. went to the home of her neighbor, Kelly Fake. *Id.* at pp. 309-10, 445. At the time, Fake noticed that S.C. was in her pajamas, barefoot, her hair was unkempt and she seemed upset and scared. *Id.* at p. 446. When S.C. told Fake that she had been raped, Fake called S.C.'s mother, who in turn contacted the Saratoga County Sheriff's Department ("Sheriff's Department"). *Id.* at pp. 338-39. After the police arrested VanNess, Melissa returned home with her daughter. *Id.* at pp. 340-41. At that time, S.C. spoke with Saratoga County Deputy Sheriff Tim Brown, *id.* at pp. 463-64, while another officer secured beer bottles which S.C. stated VanNess had disposed of in a wooded area outside her home. *Id.* at pp. 464, 483. Soon thereafter, S.C. went to a local hospital to be examined. *Id.* at p. 392. Medical personnel examined her at the time and noticed bruising on S.C.'s upper torso, left upper arm, and the area around her shoulders. *Id.* at pp. 570-71. At S.C.'s request, however, she was not subjected to an internal examination with a speculum, *id.* at p. 602, and, as a result, no definitive conclusion could be reached as to whether she had been sexually assaulted.[3] *Id.* at p. 613.

Following his arrest, VanNess was brought to the Sheriff's Department for questioning. At that time, Investigator David R. Towne informed VanNess of his *Miranda* rights.[4] Trial Tr. at p. 359. VanNess waived those rights and thereafter admitted to the investigator that on the morning of November 30, 2004, he had been drinking beer with S.C., he had slapped her, he had sexual intercourse with her, and that she performed oral sex on him. *Id.* at pp. 374-375. He explained, however, that the sexual contact between the two was entirely consensual. *Id.* at p.

---

[3] Vaginal swab samples, however, were taken from S.C. Trial Tr. at p. 603.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

376.[5]

Nicole Shear of the New York State Police Forensic Investigation Center ("N.Y. Forensic Center") tested the vaginal swab samples taken from S.C., as well as a cutting that had been taken from the crotch area of the underwear S.C. was wearing on the day she was attacked. *Id.* at pp. 502-04.  The swabs and the victim's underwear both tested positive for the presence of seminal fluid.  *Id.* at pp. 505-06.  Nicole Zevotek, a forensic scientist with the N.Y. Forensic Center, *id.* at p. 526, performed deoxyribonucleic acid ("DNA") profiling analysis on the vaginal swabs, the underwear cutting, and a sample that had been taken of VanNess' blood.  *Id.* at pp. 528-29.  Zevotek ultimately concluded that the fluids contained on the swabs and underwear cutting matched VanNess' DNA profile, and that the likelihood of another male matching that same DNA profile was approximately 1 in 300 billion.  *Id.* at pp. 545-46.

As a result of the foregoing, a Saratoga County grand jury returned a multi-count indictment against VanNess, charging him with Rape in the First Degree, contrary to New York Penal Law ("Penal Law") § 130.35(1); Criminal Sexual Act in the First Degree, in violation of Penal Law § 130.50(1); Rape in the Second Degree, contrary to Penal Law § 130.30(1); Criminal Sexual Act in the Second Degree, in violation of Penal Law § 130.45(1); Sexual Abuse in the First Degree, contrary to Penal Law § 130.65(1); Endangering the Welfare of a Child, in violation of Penal Law § 260.10(1); and Unlawfully Dealing with a Child, contrary to Penal Law § 260.20(2).  *See* Indictment No. M-027-2005V ("Indictment").

On January 17, 2006, VanNess' jury trial on the foregoing charges commenced in

---

[5] Around that time, Inv. Towne observed a fresh bite mark on VanNess' upper left arm, which Inv. Towne photographed.  Trial Tr. at p. 377.

4

Saratoga County Court with County Court Judge Jerry J. Scarano presiding. At the conclusion of that trial, the jury convicted VanNess of all charges. *See* Trial Tr. at pp. 750-54. On March 27, 2006, VanNess was sentenced by Judge Scarano to an aggregate term of thirty-six years in prison. *See* Transcript of Sentencing of Robert C. VanNess (3/27/06) at pp. 15-17.

VanNess' appellate attorney filed a brief on behalf of VanNess in the New York State Supreme Court, Appellate Division, Third Department. In that brief, counsel argued that: i) VanNess was entitled to dismissal of certain counts of the Indictment because such charges were duplicitous in light of the victim's testimony; ii) trial counsel rendered ineffective assistance; and iii) the County Court erred in permitting the Saratoga County District Attorney ("District Attorney") to bolster the victim's credibility with evidence of her prior consistent statements. *See* Appellate Brief on Appeal. VanNess thereafter filed a *pro se* supplemental brief. In that filing, VanNess alleged, *inter alia*, that Nurse D. Worth committed perjury at VanNess' trial, and that such nurse, together with the Sheriff's Department and District Attorney's Office, fabricated the forensic evidence used against VanNess at trial. *See* Dkt. No. 15, Exh. D. On May 9, 2007, the District Attorney filed a memorandum of law in opposition to VanNess' appeal with the Appellate Division. *See* Dkt. No. 15, Exh. C.

While that appeal was still pending, on May 21, 2007, VanNess filed a motion to vacate his judgment of conviction with the County Court pursuant to New York's Criminal Procedure Law ("CPL"), § 440.10. *See* Dkt. No. 15, Exh. I ("Initial CPL Motion"). In that submission, VanNess listed the following in support of his claim that his judgment of conviction should be

vacated: "perjury; no evidence; prosecutorial misconduct; no DNA ... in record [and] no *Huntley*[6] hearing on medical things." *See* Initial CPL Motion at p. 1.  In support of his claim challenging the forensic evidence introduced against him at trial, VanNess argued that the medical examination of S.C. revealed that she had not sustained any external or internal injuries, and that there was no evidence of any penetration.  *Id.*, "Statement of Facts" at p. 4.  VanNess also referred to a document in which both the New York State Division of Criminal Justice Services ("DCJS") and the New York State Police indicated that the DNA testing it conducted in conjunction with the criminal investigation failed to disclose any match between VanNess and the relevant forensic evidence.  *Id.*  The District Attorney opposed that application, and in his Decision and Order dated August 1, 2007, Judge Scarano denied VanNess' motion without a hearing.  *See* Dkt. No. 15, Exh. M.  After that decision, VanNess submitted a letter to the court dated April 20, 2007, from John Hicks, the Director of the DCJS' Office of Forensic Services, in which Director Hicks declared that "no record of a specific request [had been] made for a selective comparison with [VanNess'] DNA profile nor a match of [his] profile with other DNA profiles in the [agency's DNA] Databank."  *See* Dkt. No. 15, Exh. O ("April 20th Letter").  Judge Scarano thereafter directed the District Attorney to offer its interpretation of the April 20th Letter, and on August 24, 2007, the District Attorney advised the court that Director Hicks had informed the District Attorney that the April 20th Letter "was not accurate" and that DCJS was in possession of "a record of a match between [VanNess'] DNA profile and a forensic profile entered in the New York State Police Forensic Investigation Center."  *See* Dkt. No. 15, Exh. Q.

---

[6] *People v. Huntley*, 15 N.Y.2d 72 (1965).  The term "*Huntley* hearing" refers to the New York procedure by which a defendant seeks to suppress a confession or admission alleged by the defendant to have been made involuntarily.  *See* CPL § 710; *U.S. ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 n.13 (2d Cir. 1974); *Harris v. New York*, 202 F.Supp.2d 3, 4 & n.3 (S.D.N.Y. 2001).

That letter further indicated that "[t]he match was reported in a letter to the State Police dated July 21, 2005." *Id.*[7]  In his Decision and Order dated September 7, 2007, Judge Scarano indicated that he had reconsidered his August 1, 2007 decision denying VanNess' Initial CPL Motion, and re-affirmed his denial of that application.  *See* Dkt. No. 15, Exh. T.  VanNess does not appear to have sought leave to appeal that decision from the Appellate Division.

On August 9, 2007, the Appellate Division unanimously affirmed VanNess' convictions and sentences.  *People v. VanNess*, 43 A.D.3d 553 (3d Dept. 2007).  VanNess sought leave to appeal that decision from the New York State Court of Appeals, however that request was denied by that court.  *People v. VanNess*, 9 N.Y.3d 965 (2007).

On October 24, 2007, VanNess filed a second CPL § 440.10 motion with the County Court.  *See* Dkt. No. 15, Exh. U.  In that application, he claimed that his conviction should be vacated because of "prosecutorial misconduct, no evidence, perjuried [*sic*] testimony, new evidence, malicous [*sic*] prosecution, violation of civil rights and consitional [sic] rights."  *Id.*  By Letter Decision and Order dated December 5, 2007, the County Court denied that motion pursuant to CPL § 440.10(3)(c) because VanNess had "raise[d] the same issues already decided by th[e] Court in its previous decisions"  *See* Dkt. No. 15, Exh. V.  On March 12, 2008, the Third Department denied VanNess' application for leave to appeal the County Court's order.  *See* Dkt. No. 15, Exh. Y.

In his final state court challenge to the convictions referenced *ante*, VanNess filed a petition for a writ of habeas corpus in the New York State Supreme Court, Chemung County on

---

[7] Director Hicks also sent a letter to VanNess dated August 14, 2007 which declared that the information contained in the April 20th Letter sent to him was not accurate, and that a DNA match concerning VanNess had, in fact, been made.  *See* Dkt. No. 15, Exh. S ("August 14th Letter").

7

September 24, 2007.  *See* Dkt. No. 15, Exh.  Z.  In that submission, VanNess appeared to allege that he should be released from custody, and his criminal record expunged, because of misconduct committed by the District Attorney and New York State Police Crime Laboratory, and because medical personnel concluded that the victim did not sustain any bruising to her genital area.  *See* Dkt. No. 15, Exh. Z.  That application was denied by New York State Supreme Court Justice Elizabeth Garry in a Letter-Decision and Order dated October 24, 2007.  *See* Dkt. No. 15, Exh. AA.

### B.     This Action

On March 17, 2008, VanNess filed a *pro se* petition seeking a writ of habeas corpus with this Court.  *See* Dkt. No. 1 ("Petition").  In his pleading, VanNess contends that his conviction must be overturned because:  i) his conviction was obtained by a "Grand or Petit Jury which was unconstitutionally selected and impaneled;" ii) the District Attorney improperly used evidence that was obtained pursuant to an unconstitutional search and seizure to convict VanNess; and iii) the District Attorney wrongfully claimed that VanNess' DNA was present on the victim's underwear and the vaginal swabs purportedly taken from S.C.  *See* Petition at Grounds One through Three.

The respondent filed a response in opposition to VanNess' petition, Dkt. No. 15, as well as a memorandum of law in opposition to such pleading.  *See* Dkt. No. 16 ("Resp. Mem.").  Additionally, the respondent has provided the Court with the state court record, including the trial transcript, relating to the challenged convictions.  In opposing petitioner's application for habeas intervention, respondent argues that VanNess is procedurally barred from asserting two of his grounds for relief, and that all of his claims lack merit.  *See* Resp. Mem.  Petitioner

thereafter filed a supplemental memorandum of law in further support of his request for federal habeas intervention. *See* Dkt. No. 18 ("Supplemental Mem.").

## II.    Discussion

### A.    Procedurally Barred Claims

It is well-settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....' " *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)); *see also Hill v. Mance*, 598 F.Supp.2d 371, 375 (W.D.N.Y. 2009). This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)) (other citations omitted). As the Supreme Court noted in *O'Sullivan*, "[c]omity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Id.*, 526 U.S. at 844 (citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).[8]

A petitioner exhausts available state remedies in the federal habeas context by: "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney*

---

[8] This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan*, 526 U.S. at 845 (quotation and citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).

*Gen.,* 280 F.3d 87, 94 (2d Cir. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).[9] A "basic requirement" of this exhaustion doctrine is that "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (citation omitted); *see also Berry v. Hulihan,* No. 08 Civ. 6557, 2009 WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009) (citations omitted); *Jackson v. Senkowski*, No. 03 CV 1965, 2007 WL 2275848, at *5 (E.D.N.Y. Aug. 7, 2007). A "state prisoner does not 'fairly present' a claim to a state court" where the appellate brief "does not alert [the court] to the presence of a federal claim ...." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *see also Williams v. Breslin*, No. 06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing *Baldwin*).

With respect to VanNess' claim that his conviction was obtained by a grand and/or petit jury that was unconstitutionally selected and impaneled, *see* Petition, Ground One, VanNess argues that several members of the jury that convicted him had criminal backgrounds, and that at least one juror "lied under oath." *Id.* However, VanNess did not raise this claim in either of his CPL Motions, his state petition for a writ of habeas corpus, or in his direct appeal. Nor does VanNess appear to have ever claimed in any of his state court filings the argument he has raised in his second ground for relief regarding his claim that his conviction was obtained by the use of illegally obtained evidence.

When a claim has not been fully exhausted by a habeas petitioner, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be

---

[9] Habeas corpus petitioners bear the burden of demonstrating that they have fully exhausted available state remedies. *Fink v. Bennett*, 514 F.Supp.2d 383, 388 (N.D.N.Y. 2007) (McCurn, S.J.) (collecting cases).

futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).[10]  Therefore, this Court must determine whether it would be futile for VanNess to present either of the above-mentioned claims to the state courts.

Petitioner cannot now pursue either of the above theories through another appeal to the Third Department because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio*, 269 F.3d at 91 (citations omitted).  Moreover, VanNess could not now properly raise these theories in a third CPL § 440 motion filed with the County Court because he could have raised these arguments – both of which are based upon the record – in the CPL motions he previously filed with that court. *E.g.*, *Williams v. Burge*, No. 02-CV-0695, 2005 WL 2179423, at *14 (N.D.N.Y. Aug. 15, 2005) (Peebles, M.J.) (citations omitted), *adopted*, *Williams v. Burge*, No. 02-CV-0695 (Dkt. No. 35) (N.D.N.Y. Dec. 7, 2005) (Hurd, J.).  Therefore, these two claims are "deemed exhausted" for purposes of VanNess' habeas application. *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004); *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000).  Although they are "deemed exhausted," they are procedurally defaulted.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also Ciochenda v. Artus*, No. 06 Civ. 5057, 2009 WL 1026018, at *5 (S.D.N.Y. Apr. 9, 2009) (unexhausted claims which petitioner can no longer pursue in state court are procedurally forfeited).

Federal courts may only consider the merits of procedurally defaulted claims where the

---

[10] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal district court has the authority to deny (but not grant) an unexhausted claim on the merits, and consider the exhausted claims on the merits. *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992 F.Supp. 685, 687 (S.D.N.Y. 1998).

petitioner can establish both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[11] *See Dixon*, 293 F.3d at 80-81 (citing *Coleman*); *St. Helen* 374 F.3d at 184 ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (other citations omitted); *Parker v. Phillips*, No. 05-CV-1323, 2008 WL 4415255, at *3 (E.D.N.Y. Sept. 24, 2008) (federal courts may only consider procedurally barred claims where the petitioner establishes cause for his default and prejudice therefrom, or that he is actually innocent of the crime of which he was convicted).

To establish legal "cause" which would enable this Court to consider his procedurally forfeited claims, VanNess must show that some objective, external factor impeded his ability to fully exhaust his claims in the state courts. *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Pinero v. Greiner*, No. 01 CIV. 9991, 2007 WL 2712496, at *21 (S.D.N.Y. Sept. 17, 2007) (citing *Restrepo*). Examples of such external factors include "interference by officials," ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Ikker v. Taylor*, No. 08 CV 3301, 2008 WL 5110866, at *4 (E.D.N.Y. Dec. 3, 2008), *appeal dismissed*, *Ikker v. Taylor*, No.09-0090-pr (2d Cir. Apr. 17, 2009).

---

[11] A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002).

Nowhere in this action does VanNess attempt to establish legal cause for the procedural defaults detailed *ante*.[12] Significantly, although VanNess filed supplemental papers with the Court after the respondent filed papers in opposition to VanNess' petition, *see* Supplemental Mem., he has never claimed – much less established – that there exists legal cause excusing his failure to exhaust. This Court therefore need not consider whether he has suffered the requisite prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally forfeited claims unless **both** cause and prejudice is demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.); *D'Alessandro v. Fischer*, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*).

The finding that VanNess has failed to establish cause for his procedural defaults does not necessarily preclude this Court from considering his procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly review such claims if it is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice. *E.g.*, *Dixon*, 293 F.3d at 80-81 (citation omitted). On this question, however, the Second Circuit has noted that:

> the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995)..... " '[A]ctual innocence' means factual innocence, not mere legal insufficiency."

---

[12] The petitioner bears the burden of demonstrating cause for his procedural default and resulting prejudice. *See Simpson v. Portuondo*, No. 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

> *Bousley*[], 523 U.S. [at] 623 .... "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (citing *Schlup*, 513 U.S. [at] 327-28) ... (some internal citations and quotation marks omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674, at *8; *Marengo v. Conway*, 342 F.Supp.2d 222, 228 (S.D.N.Y. 2004).

After having reviewed the evidence adduced at trial, including the testimony the victim whom VanNess raped and sexually abused, as well as his statement to law enforcement personnel wherein he admitted his sexual conduct with the victim but claimed that same was consensual (*see* Trial Tr. at pp. 374-76), this Court finds that VanNess has not demonstrated that he is actually innocent of any of the crimes of which he was convicted.[13] Since VanNess cannot seek safe harbor from the dismissal of the above claims under this final exception permitting habeas review of his procedurally defaulted claims, the Court denies, as procedurally forfeited, his first and second grounds for relief.

**B.    Remaining Claim**

    **i.    Applicable Standard of Review**

The enactment of the AEDPA brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. In discussing this deferential standard, the Second Circuit noted in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009) that:

> a federal court may grant a writ of habeas corpus for a claim that has previously been adjudicated on the merits by a state court only

---

[13] The Appellate Division properly characterized the evidence of VanNess' guilt as "overwhelming." *VanNess*, 43 A.D.3d at 555.

>   if the adjudication of the claim:
>
>   >   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>   >
>   >   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001). In providing guidance concerning application of this standard, the Second Circuit has noted that:

>   a state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. [*Williams v. Taylor*, 529 U.S. 362,] at 405-06 [2000]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001).... [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams*, 529 U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001). "While the precise method for distinguishing

15

objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and alteration omitted). That increment, however, "need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Overton v. Newton*, 295 F.3d 270, 277 (2d Cir. 2002) (internal quotation marks and citation omitted).

### ii.     Substance of VanNess' Remaining Claim

In his third and final claim, VanNess contends that the prosecutor claimed to have VanNess' DNA on the victim's underwear and vaginal swabs, but that "[i]t was learned at trial that there was no DNA" on these items, because "[t]here was no underwear taken nor vaginal swabs." Petition, Ground Three. Petitioner further asserts that Nurse Worth "lied about doing a vaginal examination" of the victim. *Id.*

#### a.     Clearly Established Supreme Court Precedent

Petitioner's claim that the prosecutor misrepresented the DNA evidence utilized against VanNess at his trial necessarily invokes his right to a fair trial that is mandated by the Due Process Clause of the United States Constitution. *Albright v. Oliver*, 510 U.S. 266, 273 n.6 (1994) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)). For habeas relief to be granted based on a claim of prosecutorial misconduct, however, the alleged misconduct must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S.

16

637, 643 (1974)).  In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  As to VanNess' claim that a witness committed perjury at his trial, this Court notes that the Supreme Court has concluded that a conviction obtained by the knowing use of perjured testimony on the part of the prosecution "is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103 (footnote omitted).[14]

      VanNess' claims in this ground for relief are squarely contradicted by the record and without substance.

      Considering first VanNess' claim regarding Nurse Worth's testimony, the Court notes that although that witness testified that, at the victim's request, the nurse did not perform an internal examination of S.C. using a speculum, Trial Tr. at p. 602, that witness did not testify – as VanNess suggests – that she never performed *any* examination of the victim.  To the contrary, her testimony makes plain that while S.C. was at the hospital, Nurse Worth took vaginal swabs from S.C., as well as a swab of the victim's thigh. *Id*. at p. 603.  Those biological samples were then placed in a sealed kit that was in turn provided to a criminal investigator. *Id*. at pp. 603-04.  Additionally, the record establishes that Nurse Worth gave Investigator S. Zieskie of the Saratoga County Sheriff's Department portions of clothing that the victim was wearing at the time of the sexual assault. *Id.* at p. 393.  VanNess has provided no evidence which suggests that any of the above testimony was perjurious.  This aspect of his third ground for relief must

---

[14] "A conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

therefore be denied.

Petitioner also claims that fabricated DNA evidence was used to convict him at his trial. Petition, Ground Three. This claim appears to be based in part on the fact that a biological serology report created by the N.Y. Forensic Center indicated that vaginal smear slides examined by that agency failed to reveal the presence of sperm. *See* Supplemental Mem. at pp. 1-3 and attached p. A29. However, that same report establishes that the victim's underwear, as well as vaginal swabs taken from her, revealed the presence of seminal fluid. *See* Supplemental Mem. at attached pp. A28-A29. As is noted *ante*, the forensic testing of those samples revealed the presence of VanNess' DNA and, further, that the probability that a male other than VanNess was the source of the seminal fluid was 1 in 300 billion. Trial Tr. at pp. 545-46. Thus, VanNess' current habeas claim that the prosecutor wrongfully claimed that VanNess' DNA was found on the victim's person and her underwear, *see* Petition, Ground Three, is belied by the record and utterly without merit.[15] Since petitioner has not demonstrated that the state court's rejection of this claim was either contrary to, or represents an unreasonable application of, the above-cited Supreme Court precedent, this final claim in his application for habeas relief must be denied.

### III. Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –

---

[15] To the extent VanNess is relying on the April 20th Letter sent from Director Hicks to VanNess discussed above, this claim appears to overlook the fact, as is noted *ante*, subsequent to the April 20th Letter, Director Hicks explained to VanNess that the April 20th Letter "was inaccurate" because a DNA match with VanNess' DNA sample had been made and reported to the New York State Police on July 21, 2005. *See* August 14th Letter. The record therefore supports the determination that VanNess' DNA was present on the samples taken from the victim's person and her undergarment.

> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....[16]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that the habeas petition filed by VanNess (Dkt. No. 1), is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, any state court records not filed herein be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party), and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular or electronic mail.

A Certificate of Appealability shall not be issued by this Court.

Dated: June 29, 2009

*[signature]*
United States District Court Judge

---

[16] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).